UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH L. CAMPBELL,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,<br><br>　　　　　　Respondent. | Case No. 4:17-CV-00263-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court is Petitioner Keith L. Campbell's Petition for Review of

the Respondent's denial of social security benefits. (Dkt. 1.) The Court has reviewed the

Petition for Review and the Answer, the parties' memoranda, and the administrative

record, and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for Disability Insurance Benefits and Supplemental Security Income on June 30, 2013, claiming disability beginning May 15, 2013. This application was denied initially and on reconsideration, and a video hearing was conducted on July 14, 2015, before Administrative Law Judge (ALJ) Michele M. Kelley. After hearing testimony from Petitioner and vocational expert Bob G. Zadow, ALJ Kelley issued a decision finding Petitioner not disabled on August 27, 2015. Petitioner timely requested review by the Appeals Council, which denied his request for review on April 20, 2017. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 34 years of age. Petitioner has completed one year of college-level studies and has also completed a certified nursing assistant training course. Petitioner's prior employment experience includes work as a personal care attendant, psychiatric aid, nursing assistant, and medical assistant.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step evaluation for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date, May 15, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's clotting disorder, post thrombotic disorder, and pulmonary emboli severe within the meaning of the Regulations. 20 C.F.R. 404.1520(c).

**MEMORANDUM DECISION AND ORDER – 2**

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 7.08, disorders of thrombosis and hemostasis. (AR 22.)[1] If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was able to perform his past relevant work as personal care attendant and maintenance assistant. The ALJ determined also, at step five, that Petitioner retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ concluded Petitioner would be able to perform the requirements of representative occupations such as: production assembler, inspector and hand packager, and packing line worker. (AR 29.) As such, the ALJ found Petitioner has not been under a disability from May 15, 2013, the alleged onset date, through the date of her determination, August 27, 2015.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to

---

[1] The Administrative Record is found at Docket No. 11.

**MEMORANDUM DECISION AND ORDER – 3**

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).

An individual will be determined to be disabled only if his physical or mental

impairments are of such severity that he not only cannot do his previous work but is

unable, considering his age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

A claimant may obtain review of a final decision of the Commissioner of Social

Security by a civil action filed in federal district court. 42 U.S.C. § 405(g). The SSA

regulations provide the definition of "final decision." *Sims v. Apfel*, 530 U.S. 103, 107,

(2000). When the Appeals Council grants review of a claim, the decision issued by the

Council is the Commissioner's final decision. *Id.* However, if the Appeals Council denies

the claimant's request for review, the ALJ's decision is the final decision of the

Commissioner. *Id.* In this matter, the Appeals Council denied Petitioner's request for

review. (AR at 1.) Therefore, the ALJ's decision is the decision of the Commissioner in

this case.

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

**MEMORANDUM DECISION AND ORDER – 4**

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness; however, the credibility assessment is entitled to great weight; the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**DISCUSSION**

In this matter, Petitioner contends the ALJ erred at step three by failing to give controlling weight to the opinion of his treating physician and by failing to properly assess Petitioner's credibility. Additionally, Petitioner argues the ALJ erred at step four by failing to consider all functional limitations in her determination of his RFC. Independent of Petitioner's arguments regarding the ALJ's decision, he contends that an opinion letter written by his treating physician after the date of the ALJ's decision and submitted to the Appeals Council was erroneously omitted from the administrative record. He attached the letter to his opening brief before the Court. Petitioner argues that the medical opinion expressed in the letter should be included in the Court's consideration and be afforded controlling weight. The Court will first review Petitioner's arguments regarding the ALJ's decision and will next discuss the letter submitted to the Appeals Council.

**I.     The Administrative Law Judge's Decision**

**A.     Weight Afforded to the Medical Opinions**

The ALJ gave the opinion of Petitioner's treating physician, Eric W. Perttula, M.D., no weight because she found the "severe" restrictions Dr. Perttula placed on Petitioner's ability to work were "not supported by his or any other medical treatment records." (AR 26.)

The Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine

nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In instances where the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

Yet, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

In this matter, the ALJ rejected the opinion of Dr. Perttula for two reasons: (1) because it was contradicted in part by the opinion of the state agency providers; and (2) because the record as a whole did not support the opinion, specifically, the record of clinical findings.

**MEMORANDUM DECISION AND ORDER – 7**

As stated above, the ALJ gave significant weight to the opinions of the state agency medical consultants, Leslie E. Arnold, M.D. and Myung A. Song, M.D., who were non-treating, non-examining medical sources. (AR 26.) These consultants concluded Petitioner could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk with normal breaks for a total of about six hours, sit, with normal breaks for a total of six hours, and stoop or bend, climb ramps or stairs, balance, kneel, crouch, and crawl occasionally. *Id.* at 83-83.

In comparison, is the opinion provided by Dr. Perttula, Petitioner's treating physician. Dr. Perttula completed a Physician's Functional Assessment anticipating Petitioner's function and reliability for an eight hour-a-day, five day-a-week work schedule. (Assessment of June 22, 2015, AR 678-79.) In this assessment, he anticipated Petitioner could stand or walk for one third of the work day, sit for an hour or less, lift ten to twenty pounds, and bend and stoop frequently. The doctor opined further that Petitioner would need to lie down periodically to elevate his leg, that his condition would interfere with his work enough to cause him to miss more than two days a month, and that his condition would frequently interfere with his ability to pay attention and concentrate at work. Later, in response to a letter received from Petitioner's attorney, Dr. Perttula was asked to clarify whether it would be sufficient for Petitioner to elevate his leg during regular work breaks. (Response of July 29, 2015, AR 752.) Therein, Dr. Perttula opined Petitioner's condition would likely require unscheduled breaks from work to elevate his leg. *Id.*

When considering the opinions of both the state agency medical consultants and

Petitioner's treating physician, the ALJ gave significant weight to the state agency consultants' opinions. She found the opinions were based on a thorough review of the available medical records, were internally consistent, and were well-supported by the available evidence. The ALJ provided, for example, that the state agency opinions accurately reflected that Petitioner had not had a recurrence of DVT, as evidenced by multiple ultrasound reports. The ALJ cited further that the majority of treatment records reflected Petitioner had no or only minimal swelling at the time of each visit.

Notably, however, the state agency medical consultants did not provide opinions as to the effect of potential swelling on Petitioner's ability to work. Dr. Perttula, on the other hand, did provide such an opinion—thus Dr. Perttula's opinion regarding the impact of potential swelling is an uncontradicted medical opinion. Although the ALJ is not bound by expert medical opinion on the issue of disability, she must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)).

In this case, the ALJ again pointed to treatment notes and other medical records that documented little to no swelling or edema in the Petitioner's lower left extremity as support for rejecting the opinion of Dr. Perttula regarding the impact of potential swelling in Petitioner's leg on his ability to work. (AR 26.) Further, although Dr. Perttula's opinion concluded Petitioner would need to elevate his leg at unscheduled times throughout the workday, the ALJ pointed to the fact that the records did not indicate any

doctor had advised Petitioner to elevate his leg at infrequent intervals, or whenever he felt discomfort. Instead, the ALJ found that, at most, doctors advised Petitioner to remain on anticoagulation medication and to consistently wear thigh high compression stockings to control swelling. The ALJ noted that, according to the treatment records, both Petitioner's anticoagulation medication and the compression stockings had been effective in treating his blot clot condition and controlling swelling in his left extremity.

Provided the above, the Court finds the ALJ provided both specific and legitimate reasons supported by substantial evidence to reject or give no weight to the portions of Dr. Perttula's opinion that were contradicted, and provided clear and convincing reasons supported by substantial evidence to reject the portion of Dr. Perttula's opinion that was uncontradicted.

## B.    Petitioner's Credibility

Petitioner agues also that the ALJ erred by finding Petitioner only partially credible. (Dkt. 19.) The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative

evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may also consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p. Finally, a failure by the claimant to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms

about pain and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007).

In this matter, the ALJ found Petitioner's allegations of disabling limitations only partially credible, because: (1) the objective medical evidence did not support Petitioner's allegations regarding the severity and impact of pain and swelling; (2) because he had been on blood thinners prior to the DVT, had been working, and had been cleared to work again after the DVT occurred when his condition stabilized; and (3) because Petitioner's daily activities were broad and varied. (AR 25.) Each justification will be discussed below.

i.    *Objective Medical Evidence*

First, the ALJ found the objective medical evidence did not support Petitioner's allegations of severity and severe limitations caused by alleged pain and swelling. As set forth above, Petitioner alleges serious daily swelling in his left leg requires him to elevate the leg three to four times a day, at irregular intervals, to reduce swelling and prevent pain. The ALJ found, however, that the objective medical evidence did not support Petitioner's allegations of severe daily swelling, because a majority of treatment records from doctor visits indicated he had minimal to no swelling or edema at the time of the visits. The ALJ identified numerous treatment records, which included reports from doctors that Petitioner was not experiencing any unusual swelling, or there was minimal swelling or minimal edema, or no signs of swelling or edema at all. (AR 25-26; 307; 316; 322; 325; 683.) The ALJ further noted that anticoagulation medication had been successful in preventing a recurrence of DVT, compression stockings had been effective

in reducing swelling, and subsequent medical tests and imaging showed generally normal findings in his leg post DVT. *Id.* at 25.

The ALJ also discredited Petitioner's allegations of severe leg pain. As set forth above, when there is no affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. In this matter, the ALJ noted that, although Petitioner testified that he experienced severe leg pain frequently, Petitioner's physicians recorded in their treatment notes that Petitioner reported to them he was bothered by his leg only "from time to time." (AR 306.) And despite allegations of severe pain during his testimony and in his adult function reports, Petitioner declined pain medication when offered by doctors. *Id.* at 316.

### ii.    *Stabilized Condition and Clearance to Work*

Next, the ALJ found the evidence in the record showed that Petitioner had clotting issues prior to the DVT in May of 2013 and was taking blood thinners prior to his alleged onset date. Yet, despite those problems, Petitioner had continued to work. Next, the ALJ noted that, after the occurrence of his DVT, Petitioner requested to return to work and his doctor approved the request without restrictions. Finally, the ALJ pointed to the fact that there were no indications in the records that Petitioner had new or worsening symptoms after the onset date. Instead, the record showed Petitioner's condition had been stable and that he was tolerating therapy with minimal symptoms.

iii.    *Petitioner's Daily Activities*

Last, the ALJ found Petitioner's allegations regarding the severity of swelling and pain were further undermined by the broad range of his daily activities. In addition, Petitioner's testimony during the hearing, the ALJ considered also the two separate adult function reports completed by Petitioner in support of his application and appeal of the first denial of benefits. (First Report at AR 231-39; Second Report at AR 248-565.) The Court has reviewed the statements made therein, along with Petitioner's testimony during the hearing before the ALJ. Petitioner's adult function reports state that his days were mainly spent on activities related to the care of his children. (AR 232.) In the second adult function report, Petitioner stated that although he provided such care, he could only do so with a lot of help from family members. *Id.* at 249. Petitioner reported also that he prepared simple meals for his children on a frequent basis and that he helped his wife with household chores, including cleaning, laundry, and loading and unloading the dishwasher. *Id.* at 233. Within the second report, however, he stated he was limited to making meals that took ten minutes or less to prepare due to his need to elevate his left leg. *Id.* at 250.

Petitioner also reported that he drove a car and shopped for his family. *Id.* at 234. However, within the second report, he stated that he could no longer shop at all because of the swelling and pain in his leg. *Id.* at 251. Finally, within the second report he stated that any use of his leg affected his abilities to lift, squat, stand, walk, sit, kneel, and climb stairs. He reported being able to walk only ten to thirty feet without a break of unspecified time depending on level of pain and swelling. *Id.* at 253.

**MEMORANDUM DECISION AND ORDER – 14**

Petitioner's testimony during the hearing before the ALJ largely tracked the information supplied in his two adult function reports. Petitioner testified to the following: he elevated his leg above his heat three to four times a day for up to 45 minutes at a time (AR 47-49); if he did not elevate his leg, it swelled excessively and became painful (AR 48); pain in his left leg causes him to limp while walking (AR 48-49); his need to elevate his leg is not something that can be scheduled at the same time every day (AR 73); the severity of swelling in his leg varies each day (AR 73-35); and finally, he is essentially "medically retired." When specifically questioned by the ALJ about reports made to his treating physician that he had replaced a water heater in October of 2013, Petitioner testified that he was able to replace it with "a lot of help" and that all he did was "hook it up after it got moved into place." (AR 58.)

As set forth above, on review the Court must uphold the ALJ's credibility determination if supported by substantial evidence in the record. Here, the ALJ provided three specific reasons –lack of corroborating evidence in the medical records, evidence of a stabilized condition, and varied and broad daily activities– to support her finding that Petitioner's allegations of the severity and impact that his DVT and the attendant symptoms of swelling and pain were only partially credible. Provided this, the Court will not engage in second guessing or substitute its judgment for that of the ALJ. Therefore, the Court finds the ALJ's determination that Petitioner was only partially credible was supported by substantial evidence.

### C.    RFC Determination

Finally, Petitioner argues the ALJ erred in the assessment of his RFC because she failed to include all of Petitioner's functional limitations in the RFC determination. Specifically, Petitioner asserts that in addition to considering Petitioner's ability to sit for and stand, the ALJ should have included his need to elevate his leg sporadically. Respondent argues, however, that the ALJ's RFC determination properly considered the limitation because it was correctly excluded as unsupported by substantial evidence in the record at step three in the process.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.*  Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in her hypothetical questions to the vocational expert but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Here, the ALJ determined that Petitioner could perform his past relevant work as a personal care attendant, which under the Dictionary of Occupational Titles is classified as

light semi-skilled work. (AR 27-28.) She determined also that Petitioner could perform past relevant work as a maintenance assistant, which is classified as heavy semiskilled work. *Id.* The ALJ went on to step five and made an alternative finding that Petitioner could perform other light work, including the representative occupations of production assembler, inspector and hand packager, and packing line worker. *Id.* at 29.

In these determinations, the ALJ relied on the vocational expert's testimony that even if Petitioner had the limitation of needing to change positions every 30 to 60 minutes, while staying on task, he could perform his past relevant work as well as the above listed jobs. *Id.* The ALJ posed an additional hypothetical including the requirement that Petitioner had the limitation of elevating his leg at least once for 45 minutes during the work day, assuming Petitioner could elevate his leg once before work and once after returning home. The vocational expert testified that a person could still perform the light work described above, including Petitioner's past relevant work. (AR 69-71.)

Because the ALJ found the specific limitation that Petitioner needed to sporadically elevate his leg to reduce swelling was unsupported by substantial evidence in step three, the ALJ was not required to include that information in her hypothetical to the vocational expert, and thus such exclusion was not error. Further, the ALJ *did* include the limitation of the Petitioner needing to elevate his leg at least once during the workday. Therefore, the ALJ's reliance on the vocational expert's opinion was proper, as was her determination that Petitioner had sufficient residual functional capacity to tolerate the demands of his past relevant work.

In sum, because the ALJ's determinations above were supported by substantial

evidence, and because the correct legal standards were applied, the Court will affirm the ALJ's disability determination.

## II.    New Evidence Submitted to the Appeals Council

The Social Security regulations provide that the Appeals Council may review a case in a number of scenarios, including when a claimant submits "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision [by the ALJ], and there is a reasonable probability that the additional evidence would change the outcome." 20 C.F.R. § 404.970(a)(5). No good cause showing is required for the claimant to submit additional evidence to the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). And, "evidence submitted to and considered by the Appeals Council is not new but rather part of the administrative record and properly before the district court."

In this matter, the additional evidence at issue is a letter composed by Petitioner's primary care physician, Dr. Perttula, and first submitted for consideration to the Appeals Council upon their review of the ALJ's decision. (Dkt. 19 at 16-17.) Petitioner suggests the Appeals Council considered the new evidence and then erroneously excluded it from the record. (Dkt. 18 at 8.) However, the record indicates the Appeals Council declined to review the additional evidence in question and also declined to review the case. The Appeals Council's decision states the council "looked at" the letter. (AR 2.) However, because the letter was dated December 21, 2015, and the ALJ decided the case through August 27, 2015, the Appeals Council found the new evidence did not relate to the period on or before the hearing decision, as required by the regulations, and declined to consider

the content of the letter. *Id.* The Appeals Council's decision noted that, should Petitioner want the Commissioner to consider whether he was disabled after August 27, 2015, he would need to reapply based on the new time period. *Id.*

Upon review, despite the date of the letter, the Court finds the content does relate to the period on or before the date of the ALJ's hearing decision. However, as set forth above, Petitioner must demonstrate that there is a reasonable probability that the new evidence would have changed the outcome of the administrative hearing, if remanded by the Appeals Council and reconsidered by the ALJ. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). As explained below, the Court finds Petitioner has not shown the evidence in the letter was material.

The letter provides the following "additional" evidence: Petitioner has history of PE and DVT in his left leg; he diagnosed with hypercoagulable syndrome and requires life-long anticoagulation; Petitioner was diagnosed with venous stasis in August of 2012; he was prescribed compression stockings and instructed to "elevate his leg as much as possible; Petitioner was diagnosed with chronic DVT with pain that will come and go; he is prone to developing edema and pain in the left leg because of his medical issues; his leg swells even when he wears compression stockings and takes anticoagulation medication; his leg does not swell on a predictable schedule and varies depending on Petitioner's activities and diet; elevating his leg prevents symptoms; and Dr. Perttula himself witnessed Petitioner struggling at work due to his swollen leg. (Dkt. 19 at 16-17.) Dr. Perttula provided this summary prior to stating his medical opinion that Petitioner may need to elevate his left leg for periods for longer than ten minutes to keep the edema

in check. *Id.* He concludes also that there is no way to schedule or predict when longer elevation periods will be necessary. *Id.*

The additional evidence submitted through the letter is at once a summary of information found in the medical records reviewed by the ALJ, and Dr. Perttula's opinion that the ALJ's conclusion regarding the feasibility of Petitioner controlling his edema through regularly scheduled breaks of ten minutes throughout a work day was not "practical" or "feasible." Notably, the ALJ previously considered this very same opinion. In the letter that appears in the administrative record, Dr. Perttula stated it was his opinion that Petitioner's swelling could not feasibly be controlled by regular, scheduled breaks throughout the workday. (Dkt. 752.)

Therefore, the Court finds that although the reason cited by the Appeals Council in its decision not to consider the letter was technically incorrect, had the Appeals Council further considered the contents of the letter, Petitioner would not have been able to demonstrate, and did not demonstrate here, a reasonable probability that the evidence in the letter would have changed the outcome of the hearing before the ALJ.

## CONLCUSION

The Court affirms the decision that Petitioner is not disabled for purposes of receiving disability benefits. The ALJ's decision was supported by substantial evidence and was based on the proper legal standards. The Court affirms also the Appeals Council's decision not to remand the case based on new evidence. Even had the Appeals Council considered the evidence, Petitioner failed to show a reasonable probability that it would have changed the outcome of the hearing.

**MEMORANDUM DECISION AND ORDER – 20**

## <u>ORDER</u>

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.

DATED: September 20, 2018

Candy W. Dale
U.S. Magistrate Judge